UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GREGORY L. LONDON,

      Petitioner,

v.                                                            Case No.  1:15cv66/WTH/CJK

JULIE JONES,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 11).  Petitioner replied.  (Doc. 19).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by amended information in Alachua County Circuit Court Case No. 10-CF-1164, with one count of felony battery causing great bodily harm, permanent disability, or permanent disfigurement (Count I), and one count of aggravated battery causing great bodily harm, permanent disability, or permanent disfigurement (Count II).  (Doc. 11, Ex. A, pp. 4-5, 24-25).[1]  The victim was petitioner's sister, Margarie Roberson.

The State *nolle prossed* Count I on November 15, 2010, just prior to jury selection.  (Ex. C, pp. 184-185).  The case went to trial on November 18, 2010, and the jury found petitioner guilty of Count II as charged.  (Ex. A, p. 33 (written verdict); Ex. B (trial transcript)).  Petitioner was adjudicated a prison releasee reoffender and sentenced to 15 years in prison.  (Ex. A, pp. 34-36 (judgment and sentence); Ex. B, pp. 161-165 (petitioner's qualification as a PRR and oral pronouncement of sentence)).  On November 22, 2011, the Florida First District Court of Appeal (First DCA) affirmed the judgment with written opinion.  *London v. State*, 75 So. 3d 357 (Fla. 1st DCA 2011) (copy at Ex. F).

---

[1]References to exhibits are to those provided at Doc. 11.  Reference to a particular page of an exhibit is to the page number appearing at the bottom of the page.

On November 7, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. J, pp. 1-18).  The state circuit court summarily denied the motion with record attachments.  (Ex. J, pp. 27-105).  The First DCA affirmed, per curiam and without a written opinion.  *London v. State*, 163 So. 3d 1185 (Fla. 1st DCA 2015) (Table) (copy at Ex. M).  The mandate issued March 17, 2015.  (Ex. P).

Petitioner filed his federal habeas petition on April 9, 2015, raising these two claims of ineffective assistance of trial counsel:    (1) trial counsel gave constitutionally inadequate advice during plea negotiations, and (2) trial counsel was constitutionally ineffective during trial when he failed to object, and instead stipulated to admission of a recording of the 911 call made by Ebony London, petitioner's daughter, seeking medical assistance for Ms. Roberson.   (Doc. 1).  Respondent asserts that both claims fail because the state court's rejection of them is neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 11).  Petitioner replies that the state court did not have a sufficient factual basis to deny relief on his first claim without holding an evidentiary hearing, because the record attachments do not refute his allegations.   Petitioner asks this court to hold an evidentiary hearing on Ground One.  (Doc. 19).

## RELEVANT LEGAL PRINCIPLES

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

---

II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's

claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-03, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the

Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

Both of petitioner's claims are grounded in his assertion that trial counsel was ineffective. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.

2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant."  *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("To

overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Where, as here, a petitioner rejects a plea offer, he must establish "that there is a reasonable probability that [he] would have accepted that offer but for counsel's deficient performance, and that the plea would have resulted in a lesser charge or a lower sentence." *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1317 (11th Cir. 2013) (*citing Missouri v. Frye*, 566 U.S. 133, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012)).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177

F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

<u>Ground One</u>    <u>Defense counsel rendered ineffective assistance during plea negotiations.</u> (Doc. 1, p. 5).

Petitioner's first claim contends:

> On October 18, 2010, during pretrial negotiations, the State of Florida (State) offered Petitioner a favorable plea offer (7½ years) and the trial court was willing to accept the offer. However, Petitioner's appointed counsel, David Ashwell, (Mr. Ashwell), had already advised Petitioner that the State's case-in-chief was insufficient to convict him at trial. Based on said advice, Petitioner rejected the State's favorable pretrial offer and insisted on proceeding to trial unless the State negotiated a better "deal." Thereafter, the case proceeded to trial. At trial, the State's evidence proved overwhelming and the jury found

> Petitioner guilty as charged. Thereafter, the trial court sentenced Petitioner to 15-years min/man, double the State's favorable pretrial offer of 7½ years. As such, Mr. Ashwell's misadvice caused Petitioner to reject a favorable pretrial offer and as a result, he received a much harsher sentence. Wherefore, Petitioner was deprived of his constitutional right to effective assistance of counsel and such violation prejudiced Petitioner.

(Doc. 1, p. 5). The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 motion. (Doc. 1, pp. 5-6; Doc. 11, p. 9). Respondent asserts that petitioner is not entitled to federal habeas relief, because he cannot satisfy § 2254(d)'s stringent standard. (Doc. 11, pp. 9-14).

Petitioner raised this claim as "Point One" of his Rule 3.850 motion. (Ex. J, pp. 7-9). The state circuit court identified the governing legal standard as the *Strickland* standard (Ex. J, p. 28), and denied relief as follows:

> 4. As to ground (A), Defendant alleges that trial counsel was ineffective for advising him not to take the plea deal offered to him by the [S]tate. Specifically, Defendant alleges that trial counsel informed him that the State's evidence was insufficient to convict him, and that trial counsel told him the State could not get the 911 recording entered into evidence without Ebony London's testimony, as she was the person who placed the 911 call. Other than the issue with regards to the 911 recording, Defendant fails to allege specific facts that substantiate his claim that trial counsel advised him to reject the plea offer. In this case, the victim, Margarie Roberson, knew the person who battered her. The victim and the Defendant are family. *See* Sworn Complaint. Therefore, the identity of the batterer was not in question. Defendant had the police reports and doctor's reports. *See* Trial Status Conference/Jury Selection Transcript at 6 (lines 7-16). Thus, Defendant knew the weight of the evidence against him. However, defendant was hoping the State could not produce the victim and the

witness, Ebony London, to this crime. *Id.* at 5 (line 4) – 7 (line 17). Defendant's trial strategy failed as the State was able to successfully subpoena the victim and get her to testify. If the Defendant truly believed the evidence against him was insufficient to convict him, he would not have told the Court that he only wanted to go to trial if he could not get a better deal than the State's current plea offer which he rejected. Trial Meeting Transcript at 2 (line 10) – 3 (line 5). Defendant even offered the State a plea deal the morning the trial was set to begin. Jury Trial Transcript at 5 (line 8) – 6 (line 6). Defendant offered the State a plea deal of twelve years, which was higher than the original offer from the State, and the State rejected this plea. *Id.* at 5 (line 8) – 6 (line 6); at 16 (lines 14-23).

Defendant also alleges that he would have taken the plea offer had he have [sic] known that the advice of trial counsel was not accurate with regards to the admissibility of the 911 call. Defendant fails to show how the 911 recording being entered into evidence prejudiced him as there was [a] substantial amount of evidence, independent of the 911 recording, presented to the jury concerning the extent of the injuries to the victim as well as the victim identifying her brother as the batterer. The victim testified at the tr[ia]l that Defendant was the person who battered her. *Id.* at 38 (line 15). The victim testified that Defendant is her brother. *Id.* at 36 (lines 5-15). The victim testified that she was hit hard. *Id.* at 39 (line 2) – 40 (line 3). The victim testified that blood was pouring out of her. *Id.* at 40 (lines 7-9). The victim testified that she was still bleeding after the paramedics cleaned her up. *Id.* at 46. The victim testified that she has a permanent scar from the injury to her lip. *Id.* at 47 (line 12) – 48 (line 3). The victim testified that there was a large amount of blood at the scene from her injuries. *Id.* at 48 (line 9) – 50 (line 9). The victim testified that she had to have stitches and that she had face fractures. *Id.* at 52 (lines 17-23). The plastic surgeon, Sonu Jain, M.D., who performed surgery on the victim testified that the victim's injuries were caused by a severe trauma. *Id.* at 62 (lines 24-25). The plastic surgeon testified about the victim['] s face fractures. *Id.* at 63 (line[s] 1-8). He also testified that he had to put the victim'[s] bones back together and insert plates into her face. *Id.* at 63 (line 24) – 68 (line 2). Additionally, he testified that the victim's jaw had to be wired shut. *Id.* at 68 (lines 4-7). The police officer, Edward Wilkins,

who showed up at the scene testified that the victim was bleeding from her nostrils and her lip. *Id.* at 77 (lines 7-10). The officer testified to the extensive amount of blood at the scene while looking at photographs which were being introduced into evidence. *Id.* at 77 (lines 11-15); 82 (lines 22-25); 83 (lines 4-17). The officer testified that he did not interview the victim on the scene because she was so upset, and he needed her to calm down to help reduce the amount of blood flow coming from the victim. *Id.* at 77 (line 20) – 78 (line 3). He also testified that the paramedics were not able to stop the victim's bleeding on the scene. *Id.* at 78 (lines 4-9). The radiologist, Jeffrey Bennett, M.D., who read the victim's CAT scans, also testified about the numerous facial fractures the victim sustained. *See Id.* at 97 (line 15) – 99 (line 25). Defendant fails to show how he was prejudiced by the 911 call being admitted into evidence when the greater weight of the evidence presented to the jury shows that the Defendant was the person who battered the victim, and the victim sustained sever[e] injuries as a result of that battery. Therefore, this claim is without merit.

(Ex. J, pp. 28-30). The First DCA summarily affirmed. (Ex. M).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claims. *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855

(U.S. Nov. 15, 2016).  Where, as here, "the last adjudication on the merits provides

no reasoned opinion, federal courts review that decision using the test announced in

*Richter*."  *Wilson*, 834 F.3d at 1235.  The *Richter* test provides that "[w]here a state

court's decision is unaccompanied by an explanation," a petitioner's burden under

section 2254(d) is to "show[ ] there was no reasonable basis for the state court to

deny relief."  *Richter,* 562 U.S. at 98.  "[A] habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision

of [the] Court."  *Id.* at 102.

　　　　Under the *Richter* test, petitioner must establish there was no reasonable basis

for the First DCA to affirm the denial of his claim.  In reviewing the reasonableness

of the First DCA's decision, this court may, but is not required to, look to the

reasoning of the state court below (the state circuit court).  The Eleventh Circuit

explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is
> necessarily at least one reasonable basis on which the state [appellate]
> court could have denied relief and our inquiry ends.  In this way, federal
> courts can use previous opinions as evidence that the relevant state
> court decision under review is reasonable.  But the relevant state court
> decision for federal habeas review remains the last adjudication on the
> merits, and federal courts are not limited to assessing the reasoning of
> the lower court.

834 F.3d at 1239.

The First DCA reasonably could have accepted the circuit court's factual determinations, most significantly, its findings that at the time petitioner rejected the State's offer he knew there was ample evidence of his guilt in light of the information contained in the arrest report, police reports and medical reports, but chose to reject the offer because he believed the State might have trouble securing the attendance of Ms. Roberson and Ebony London for depositions and trial, and thought this vulnerability could help him "get a better deal". The transcript of a "trial meeting" held on October 18, 2010, is attached to the state circuit court's order. The transcript reveals this exchange:

> THE COURT:  Good morning, Mr. London.  My name is Judge Kreider.  Could I get you to raise your right hand.
>
> (Defendant sworn.)
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Okay.  Do you still wish to proceed to trial?
>
> THE DEFENDANT:  Unless I get a better deal, your Honor.
>
> THE COURT:  Has the [S]tate made an offer in this case?
>
> MR. EZZELL [Prosecutor]:  I have.
>
> THE COURT:  Has it been put on the record previously?

MR. EZZELL:  I don't believe it's been put on the record.  Correct me if I'm wrong, Mr. Ashwell [Defense Counsel], I believe the offer was 90 months in the Department of Corrections with 60 months as a prison release reoffender mand-min, so he would not get gain time on the first 60 months.  He could get gain time on the last 30 months of a 90-month aggregate sentence.

He needs to be aware, obviously, just as is inherent in that offer, you are a prison releasee reoffender – or it's the [S]tate's position that you are, and if you are convicted of a second-degree felony of aggravated battery, it would be a mandatory 15 years day for day.

Judge, I believe the defendant has indicated that he acknowledges that.

MR. ASHWELL [Defense Counsel]:  Yes.

THE COURT:  Does he also qualify as a habitual felony offender, a habitual violent felony offender?

MR. EZZELL:  I'm sure that he does.  I haven't filed notices of those.  I'll proceed just on the PRR at this time.  I'm sure he qualifies under any host of sentencing scheme.

He does need to be, I guess, arraigned on the Amended Information that we filed this morning, as a matter of procedure.  And . . . it's my file's [sic] recollection that no depositions have been taken in this case.  I don't have any Brady notice, unlike the last case, but since no depositions have been taken, I would ask for a colloquy with the defendant, that he understands that none of them have been taken, that he agrees with that strategy, and he wants to proceed in spite of that.  So we need him arraigned and we need that colloquy.

THE COURT:  Okay.  First, as to the Amended Information, what say the defense?

MR. ASHWELL:  No objection to that, your Honor.

THE COURT:  All right.  Enter an oral plea of not guilty and waive reading?

MR. ASHELL:  Yes, sir.

THE COURT:  All right.  And then the [S]tate has brought up that there's been no depositions taken in this case?

MR. EZZELL:  Yes, sir.

THE COURT:  Okay.

MR. ASHWELL:  That fits with my strategy in the case, having discussed that with the defendant.  I think what the defendant is now saying is that he would like those depositions taken, but the court can discuss that with him.

THE COURT:  All right.  Mr. London, my understanding is you're a prison releasee reoffender, so you're facing a statutory max on these cases.  So my understanding is your attorney has decided not to take any depositions, but at this point you would like to have depositions taken?

THE DEFENDANT:  Yes, sir, I would.

THE COURT:  How fast can we accomplish that?  Can it be done by the next trial period?

MR. EZZELL:  Sure.

MR. ASHWELL:  I'm sure we could.

MR. EZZELL:  Assuming everybody shows up.

THE COURT:  So is your client asking for a continuance?

MR. ASHWELL:  I believe so, your Honor, and I think because of what he's facing, at a minimum, whatever my strategic concerns might be, I would want to accommodate him on that.

THE COURT:  Okay.  What if we move – [S]tate's position, as in a continuance?

MR. EZZELL:  The [S]tate's disappointed, but I'm not really in a position to say that that wouldn't constitute a problem down the road. I do think, from Mr. Ashwell's perspective, obviously, there are certain decisions that the trial counsel gets to make independent of his client, so they have the right to disagree at times, and this is one of them where Mr. Ashwell could certainly trump Mr. London, but it doesn't sound like –

THE COURT:  It doesn't sound like Mr. Ashwell wants to trump his client on this one.

MR. EZZELL:  Correct.

THE COURT:  Is that correct, Mr. Ashwell?

MR. ASHWELL:  That's correct.

THE COURT:  Okay.  I'm going to grant your continuance to the next trial term. . . .

(Ex. J, pp. 38-41).  Petitioner's strategy in rejecting the plea offer and insisting that depositions be taken was based on his hope that the State would be unable to produce Ms. Roberson and Ms. London and would have no choice but to offer him a better deal.   A trial status conference held on November 15, 2010, just before the commencement of jury selection, reveals this exchange:

MR. ASHWELL [Defense Counsel]:  I think Mr. Ezzell and I have Gregory London, Your Honor.

David Ashwell, for the record.  This is Gregory London, Sr., 2010-CF-1164-A.

Mr. London is present.  We're ready for trial.

MR. EZZELL [Prosecutor]:  State is ready.

THE COURT:  Any offers that's going to be withdrawn that we need to let Mr. London know about?

MR. EZZELL:  I don't believe so.  I think they were revoked.  I think the offer was in a 60 month, 90 month range, something like that.  Some of it might have been PRR.  Maybe five years PRR.

MR. ASHWELL:  I think so.

MR. EZZELL:  If he's convicted he faces a mandatory 15 PRR on the ag battery.  I think the offer was five; I guess on PRR now, 15 if he's convicted.

THE COURT:  Right now you're set to be number three before Judge Curtin for jury selection.  Let's see what's happening so stick around a minute and we'll let you know.

MR. ASHWELL:  Judge, can we recall Mr. London?

THE COURT:  Yes.

(Matters as to another defendant.)

MR. ASHWELL:  Mr. [sic] Honor, Mr. Ezzell just wanted me to clarify for the record with Mr. London as well that we did not depose the victim and key witness in the case.  And Mr. London and I discussed that and it was his wish to go ahead and go for trial without that.  We are ready to – but I would like to have a word with him here.

(Mr. Ashwell confers privately with the defendant.)

MR. ASHWELL:   I think that was premised upon Mr. London believing that for whatever reason that the [S]tate did not have the victim, Your Honor.  And we have information that we've just gotten that they do, in fact, have the victim.

I think Mr. Ezzell [h]as represented that.  And he's never been anything but utterly trustworthy about such things.

I think under the circumstances – and I hate to put this off again, but I would ask to depose – for time to depose the victim.

THE COURT:  Can you – since everything else has gone away, can you do it before Thursday?

MR EZZELL:  I'd like to.  She was in the courtroom this morning.  She read the subpoena wrong as every witness does.  She, you know, read Monday, so she was sitting here.  And I sent her home to come back on Thursday.

THE COURT:  She's local?

MR. EZZELL:  Yes.

MR. ASHWELL:  Well, Your Honor, if we're going to do that – the issue was – and this happens, Mr. London wanted to get to trial ASAP. If we're going to stop and depose that person, there is also a witness and there is [sic] some doctors and nurses that Mr. Ezzell has listed as well.  If we're going to start doing depositions, instead of just going directly to trial as Mr. London had wanted, I would ask for a continuance to depose them.  I don't think this case has been around all that long.

THE COURT:  Well, it's going on eight months since arrest.  But there are other witnesses that have not been deposed?

MR. EZZELL:  No one's been deposed, no cops, no doctors, no witnesses, no victim.  And here's my take on that.  We're in the same position last month and we continued the case last month so that they could take depositions because Mr. London wanted to take the depos.

My concern here is not with Mr. Ashwell.  I think Mr. Ashwell made a wise and strategic legal decision to try to catch, you know, try to catch the [S]tate off guard or try to get the case in a trial posture before we could be ready or before we had a victim on board or something like that.  I don't have any fault with Mr. Ashwell's strategy there.

I guess my fault a little bit is with Mr. London, who, as a lawyer I can have no gripe with the defendant, but I do.  And that is, I think, last month he, you know, he said he wanted to continue the case.  And I think his reasons are sort of impure in a way in that he's saying I wanted to – you know, I want to go because I don't think that the victim is under subpoena or under service or something like that.

THE COURT:  In other words now he gambled and lost.

MR. EZZELL:  Right.  He gambled and lost.  I feel awkward in rewarding him for sort of a subversive gamble and loss; not Mr. Ashwell, but Mr. London.

THE COURT:  Mr. Ashwell, the other witnesses, other than the victim are medical personnel?

MR. ASHWELL:  Yes, sir.

THE COURT:  You have the records?

MR. ASHWELL:  Yes, sir. We had the reports from them and we have reports from the police officer.  And the issue would be the victim and a witness, both of whom are relatives of the defendant.

MR. EZZELL:  But I wouldn't necessarily –

MS. WRIGHT:  Which I don't know if the [S]tate has that person.  My information was that they didn't have either of those people, though Mr. Ezzell told me [he] has the victim.

THE COURT:  You have both?

MR. EZZELL:  I have the victim.  She was served and she's here in court today.  I don't have service on the other witness who I think maybe is his sister.

THE DEFENDANT:  Daughter.

MR. EZZELL:  The daughter.  I don't have service on her.  But the victim who is in court today assures me as soon as she gets home she'll tell them – the other witness lives at a new address now, closer to or with the victim.  And so we had her attempted to be served at the wrong address.  But the victim who was in court this morning said I'll tell her to call your office, I'll see her as soon as I get home.

So my guess is – and I said, Could she be here Thursday?  She said, absolutely, I'll just bring her.  So my guess is, even though she's not served she's going to come voluntarily.  The other young lady, the victim is served and she was in court this morning.

(Ex. C, pp. 178-183).  The parties proceeded with jury selection.

On the morning of trial petitioner, realizing the State had secured the attendance of the victim Ms. Roberson, offered the State a 12-year plea deal.  (Ex. B, pp. 4-5 (discussion of petitioner's offer and the prosecutor's submission of the offer to his supervisor for approval)).  The State rejected the offer.  (Ex. B, pp. 16-17).

Contrary to petitioner's argument (doc. 19), the circuit court's failure to hold an evidentiary hearing does not render its factual determinations unreasonable. *See Schriro v. Landrigan*, 550 U.S. 465, 476, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (holding that state court's factual finding based on record material and transcripts from the state courts was reasonable under § 2254(d)(2), despite the absence of an evidentiary hearing); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1297 (11th Cir. 2015) (same as to state court's factual findings, including its credibility determinations, based on petitioner's and trial counsel's "dueling affidavits"). There is ample record support for the state court's findings.

In light of the state circuit court's factual findings and the totality of the record, it was reasonable for that court to conclude that petitioner failed to establish deficient performance and prejudice under *Strickland*. Because the reasoning of the circuit court provides at least one reasonable basis on which the First DCA could have rejected petitioner's ineffective assistance claim, petitioner is not entitled to federal habeas relief on Ground One. *See, e.g., Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011) (holding that petitioner was not entitled to habeas relief "[b]ecause it is not clear that the [state court] erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision").

Ground Two          <u>Defense counsel rendered ineffective assistance at trial by failing to object, and instead stipulating to admission of the 911-call recording.</u>  (Doc. 1, p. 7).

Petitioner asserts defense counsel was ineffective for failing to make an authenticity-based objection to admission of the 911-call recording between Ebony London and the 911 operator.  Petitioner's specific theories are:  "(1) the caller, Ebony London, did not testify nor did the operator identify the person speaking; and (2) there was no evidence that the recording was an accurate recording of a conversation held between Ebony London and a 911 operator."  (Doc. 1, p. 7).  Petitioner asserts he was prejudiced because the recording "became a feature of the trial" as evidenced by the jury requesting to listen to the recording during deliberations.  (*Id.*).  The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 motion.  (Doc. 1, pp. 7-8; Doc. 11, p. 15).  Respondent asserts that petitioner is not entitled to federal habeas relief, because he cannot satisfy § 2254(d)'s stringent standard.  (Doc. 11, pp. 15-16).

Petitioner raised this claim as "Point Two" of his Rule 3.850 motion.  (Ex. J, pp. 9-11).  The state circuit court identified the governing legal standard as the *Strickland* standard, and denied relief as follows:

> 5.  As to ground (B), Defendant alleges that trial counsel was ineffective for failing to challenge the authenticity of the 911 recording offered into evidence by the State.  State and Defense stipulated to the authenticity of the recording of the 911 call based upon the need to

redact a portion of the 911 call in order to comply with the Court's ruling that a portion of the call was not admissible. *Id*. at 40 (line 22) – 41 (line 7); at 7 (line 3) – 13 (line 13). Additionally, Defendant fails to show how this evidence being allowed in to [sic] evidence prejudiced him as there was a great deal of evidence presented to the jury as stated in the second paragraph of paragraph 4. Accordingly, the claim raised is without merit.

(Ex. J, p. 30). The First DCA summarily affirmed. (Ex. M).

Petitioner has not established a reasonable probability his proposed objection would have succeeded. Under Florida law, voice recordings are admissible if properly authenticated. The requirement of authenticity is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fla. Stat. § 90.901. At the beginning of the 911-call recording, the operator identifies herself as "911". (Ex. B, p. 41). During Ms. Roberson's trial testimony, she identified her niece Ebony London as the caller on the 911 tape. (Ex. B, p. 43). Ms. Roberson further testified that at the time petitioner attacked her (Roberson), Ebony was standing in front of the house talking on the phone; that after petitioner attacked her, Ebony walked toward her to see what happened; that Ms. Roberson told Ebony to call 911; and that she could hear Ebony on the call. (Ex. B, pp. 43-44). In light of the record, the First DCA reasonably could have concluded petitioner failed to establish a reasonable probability of success on his proposed objection. The First DCA also reasonably could have concluded petitioner failed to show a

reasonable probability of a different trial outcome had the recording been excluded. Disregarding the recording, there was overwhelming evidence of petitioner's guilt from the trial testimony and photographs of Ms. Roberson's injuries.  (Ex. B).

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this

term) (citation omitted).   Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Gregory L. London*, Alachua County Circuit Court Case No. 10-CF-1164, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 2nd day of March, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.